```
                        UNITED STATES DISTRICT COURT
                         DISTRICT OF MASSACHUSETTS
```

```
_____
                               )
LAURA SAWYER,                  )
     individually, as Trustee of )
     M.A.W. Revocable Trust, and )
     as Trustee of 14 Avon Place )
     Realty Trust,             )
                               )
MELISSA JORDAN,                )
                               )   CIVIL ACTION
JENNIFER SAWYER,               )   NO. 1:13-cv-10590-WGY
                               )
and KATE SAWYER,               )
                               )
          Plaintiffs,          )
                               )
          v.                   )
                               )
UNITED STATES OF AMERICA,      )
                               )
          Defendant.           )
_____)
```

YOUNG, D.J.                                              January 6, 2015


                                ORDER

## I.  INTRODUCTION

In 1996, Albion Sawyer ("Albion") and his wife, Maria Sawyer ("Maria"), granted a second mortgage on their property to secure a debt owed by Albion. Compl. ¶ 27, ECF No. 1. After Albion failed to pay taxes related to his business, the Internal Revenue Service ("IRS") put a lien on the couple's property. Id. ¶¶ 29-32. In order to sell the property, an escrow account

1

was established in an amount equal to the tax lien. Id. ¶¶ 38-43. Pursuant to the language of the second mortgage, one-half of the proceeds from the sale of the property were used to pay off the mortgages on the property. See id. ¶¶ 46-48.

The Plaintiffs, the Trustee of the M.A.W. Revocable Trust and Maria's daughters, assert that Albion's half-interest in the property was exhausted through payment of the mortgages and, therefore, the money in escrow belongs to Maria's half-interest - the M.A.W. Revocable Trust. Id. ¶¶ 57-59. The United States asserts that the monies used to pay the first and second mortgages came from Albion's and Maria's respective half-interests and, therefore, the money in escrow is a residue of Albion's half-interest subject to the federal lien. U.S.' Mem. Reasons Supp. Mot. Summ. J. ("Def.'s Mem."), ECF No. 27.

**A.  Procedural Posture**

On April 1, 2008, Albion and Maria, individually and as trustees of the 14 Avon Place Realty Trust ("Avon Trust"), entered into a stipulated judgment with the United States, where judgment was entered against Albion, pursuant to United States tax law. United States v. Sawyer, No. 06-cv-11686 (D. Mass. April 1, 2008) (Gertner, J.). In December 2012, the Avon Trust and the IRS entered in an agreement (the "Escrow Agreement") to place $291,678.71 of the proceeds of the sale of the Sawyers' property into escrow to remove a tax lien the IRS had placed on

2

the property following the earlier judgment.  Compl., Ex. E, Escrow Agreement, ECF No. 1-7.  The funds were set to be released to the IRS on March 14, 2013, unless an action was commenced in District Court.  Id. ¶ 8.  Laura Sawyer - individually, as Trustee of the M.A.W. Revocable Trust, and as Trustee of the Avon Trust - along with Melissa Jordan, Jennifer Sawyer, and Kate Sawyer (collectively the "Plaintiffs"), brought this suit March 13, 2013.  Compl.

On May 7, 2014, the United States moved for summary judgment.  U.S.' Mot. Summ. J., ECF No. 26; Def.'s Mem.  On June 20, the Plaintiffs filed a cross motion for summary judgment.  Pls.' Mot. Summ. J., ECF No. 34; Pls.' Mem. Supp. Mot. Summ. J. ("Pls.' Mem."), ECF No. 35.  The same day, the Plaintiffs filed their opposition to the motion of the United States.  Pls.' Opp'n U.S.' Mot. Summ. J., ECF No. 36; Pls.' Mem. Supp. Opp'n Def.'s Mot. Summ. J. ("Pls.' Opp'n"), ECF No. 37.  The United States filed its opposition to the Plaintiffs' motion on July 10, 2014.  U.S.' Mem. Law Opp'n Pls.' Mot. Summ. J. ("Def.'s Opp'n"), ECF No. 40.  The Plaintiffs also filed a supplement on September 23, 2014.  Pls.' Supplement Mem. Supp. Summ. J., ECF No. 47.

### B. Case Stated

In lieu of summary judgment, the parties have agreed to proceed with a "case stated" hearing, after which the Court will

make findings of fact and rulings of law based on the record. Electr. Notice, ECF No. 45. Case stated hearings provide an efficacious procedural alternative to cross motions for summary judgment. See Continental Grain Co. v. Puerto Rico Mar. Shipping Auth., 972 F.2d 426, 429 n.7 (1st Cir. 1992). "In a case stated, the parties waive trial and present the case to the court on the undisputed facts in the pre-trial record." TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 135 n.6 (1st Cir. 2007). In contrast to summary judgment, where the Court must draw all reasonable inferences in favor of the nonmovant, in a case stated the Court is "entitled to 'engage in a certain amount of factfinding, including the drawing of inferences.'" Id. (quoting United Paperworkers Int'l Union Local 14 v. Int'l Paper Co., 64 F.3d 28, 31 (1st Cir. 1995)).

**II. FINDINGS OF FACT**

**A. Background**

On September 7, 1967, Albion and Maria purchased 12-14 Avon Place in Cambridge, Massachusetts (the "property"). Compl. ¶ 10. They held the house as tenants by the entirety. Id. ¶ 11. On October 6, 1993, the Sawyers, signing as co-mortgagors, granted a mortgage (the "first mortgage") to Cambridge Trust Company ("Cambridge Trust"). Id. ¶ 22-23.

On April 23, 1996, Albion and Maria entered into a postnuptial agreement. Pls.' Mem., Ex. D, Postnuptial Agreement

("Postnup"), ECF No. 35-4. The postnuptial agreement was not recorded. Pls.' Opp'n 4. The postnuptial agreement was made in consideration of the couple's agreement to place a second mortgage on the property. Postnup ¶ 2. The postnuptial agreement dissolved the tenancy by the entirety and rendered it a tenancy in common. See Postnup ¶¶ 6-7 (permitting Maria, in the event of a sale, to receive one-half of the net proceeds, and in the event of Maria's death, ensuring one-half of the property will be left to Maria's surviving children).

Prior to May 1996, Albion was in default on various business loans from Cambridge Trust. Compl. ¶ 24. The business loans were reorganized into a promissory note obligating him to pay Cambridge Trust $525,000. Compl. ¶¶ 25-26; Compl., Ex. D, Promissory Note, ECF No. 1-6. Albion, but not Maria, signed the promissory note on May 20, 1996. Promissory Note.

**B.  Second Mortgage**

On May 20, 1996, a second mortgage was granted to Cambridge Trust by Albion and Maria to secure the business loan promissory note obtained by Albion (the "second mortgage"). Compl. ¶ 27. The second mortgage contained several specially bargained-for clauses. See Pls.' Mem. 9-10. Section 14A of the second mortgage allowed Maria to transfer her one-half interest in the mortgaged property to her children without causing acceleration of the due date for the underlying debt. Pls.' Mem., Ex. E,

5

Second Mortgage, Security Agreement, & Financing Statement ("Second Mortgage") 7, ECF No. 35-5. Section 14B entitled Cambridge Trust, in the event of a bona fide sale, to the lesser of either one-half of the sale proceeds or the outstanding balance due on the first and second mortgages. Id. at 9. Similarly, section 40 entitled Cambridge Trust, in the case of foreclosure, to the lesser of either one-half of the sale proceeds after expenses or the outstanding balance due on the first and second mortgages. Id. at 15. Section 41 provided that, as long as the property was the primary residence of Maria, Cambridge Trust would have neither the right to foreclose nor the right to collect rent from the property. Id.

In October 1997, Albion and Maria conveyed the property to the Avon Trust. Compl. ¶ 12. The conveyance was recorded November 28, 1997. Id. ¶¶ 12-13; Def.'s Mem. 5. The beneficiaries of the Avon Trust are the M.A.W. Revocable Trust and the Albion Topliffe Sawyer Trust, each of which has an equal fifty percent interest. Compl., Ex. B, Schedule Beneficiaries 14 Avon Place Realty Trust, ECF No. 1-4.

### C. Tax Assessment and Lien

Acting through the IRS, the United States, on September 23, 1996, first assessed past-due taxes on Albion for employment tax liabilities. Def.'s Mem., Ex. 3, Stipulation J. & J. Entry ("Stipulated J.") 1-2, ECF No. 27-4. The IRS also assessed

6

trust fund recovery penalties on Albion relating to his business. Id. at 2. On April 1, 2008, a Stipulation for Judgment entered in favor of the United States against Albion in the amount of $233,074.55, plus penalties and interest. Id. at 3. The judgment was not recorded. Compl. ¶ 34.

Maria died April 4, 2011. Compl. ¶ 16. On July 26, 2012, Laura Sawyer, as Trustee of the Avon Trust, entered into a purchase and sales agreement to sell the property for $1,725,000. Compl. ¶¶ 36-37. On December 14, 2012, the Avon Trust and the IRS executed the Escrow Agreement, which removed the tax liens contingent on $291,678.71 being placed in escrow. Escrow Agreement. The property contract sales price of $1,725,000 was reduced by $86,250 for broker's fees, $2,000 for legal fees, and $7,866 for stamp tax, resulting in a final sales price of $1,628,884 (half of which is $814,442). Pls.' Mem. ¶ 33. Cambridge Trust discharged the first mortgage and the second mortgage for payment of $814,442, although the mortgage balances totaled $841,185.46, a difference of $26,743.46. Id. ¶ 33, 36. Pursuant to the Escrow Agreement, $291,678.71 plus interest is currently held in escrow. Compl. ¶ 42.

**III. RULINGS OF LAW**

    **A.   The Tax Liens Arose at the Time of Assessment**

If a person liable to pay tax either neglects or refuses to pay it after demand, the amount owed shall be a lien in favor of

7

the United States upon all property and rights to property belonging to that person. 26 U.S.C. § 6321. Absent another date fixed by law, the section 6321 lien arises at the time the assessment is made and continues until the liability for the amount assessed is satisfied. 26 U.S.C. § 6322.

Because Albion and Maria had converted their holding of the property into a tenancy in common and granted the second mortgage by May 20, 1996, Second Mortgage, and the earliest IRS lien date did not occur until September 23, 1996,[1] the lien attached to Albion's property interest as of that date. By the time Albion and Maria transferred their respective half-interests to the Avon Trust in October 1997, Compl. ¶ 12, Albion had been assessed $18,552.62 in past-due taxes, See Stipulated J. 1. The remaining liens, totaling $214,521.93, attached after the Avon Trust was established. Id. at 1-2.

**B.   The Second Mortgage is Unambiguous and There is Only One Reasonable Interpretation of the Parties' Obligations**

Under Massachusetts law, a "court interprets a contract that is free from ambiguity according to its plain meaning." Southern Union Co. v. Dep't of Pub. Utils., 458 Mass. 812, 820 (2011). Whether a provision of a contract is ambiguous or not

---

[1] While the United States asserts Albion was assessed employment taxes in June 1996, Def.'s Mem. 18; Def.'s Mem., Ex. 5, Notice of Fed. Tax Lien, ECF No. 27-6, the Stipulated Judgment shows the earliest assessment with regard to the lien in question was September 23, 1996, Stipulated J.

8

is a matter of law.  LPP Mortgage, Ltd. v. Sugarman, 565 F.3d 28, 31 (1st Cir. 2009).  "Contract language is usually considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and obligations undertaken."  Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989).  It is important to note that "[t]he words of a contract must be considered in the context of the entire contract rather than in isolation."  General Convention of New Jerusalem in the U.S., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007).

Courts generally ought not consider extrinsic evidence in determining if the contract language is ambiguous.  Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 179 (1st Cir. 1995).  If, however, a court holds that part of a contract is ambiguous, the resolution of the ambiguity typically turns on the parties' intent, which is often illuminated by extrinsic facts and the reasonable inferences that flow from those facts.  Id. at 178.  Interpreting intent from extrinsic evidence, however, is a question of fact for a jury.  See id.

The terms of the second mortgage are not ambiguous.  While the second mortgage does not explicitly describe the interest conveyed, reading the mortgage as a whole makes clear this mortgage is not a standard mortgage.  Cambridge Trust was

9

securing a one-half interest in the property.  Section 1 of the second mortgage is clear that the mortgage secures the promissory note signed by Albion.  Second Mortgage 1.  Section 14A, titled "Other Security Interests," prohibits a change in ownership, with the exception that Maria is allowed to transfer her one-half interest without causing acceleration of the debt due on the underlying promissory note.  Id. at 7.  Additionally, Cambridge Trust agreed to accept the lesser of one-half of the net proceeds or the balance on the first and second mortgages in the event of a sale (section 14B) or foreclosure (section 40).  Id. at 8, 15.  Finally, Section 41 establishes that as long as Maria's primary residence is the property, Cambridge Trust shall not have the right to foreclose due to a default nor could it collect rent from the property.  Id. at 15.  While Section 32 of the second mortgage defines the term "mortgagor" as "the mortgagor or mortgagors named herein," id. at 13, the mortgage, like all contracts, must be read as a whole, see MacKenzie, 449 Mass. at 835.  When reading it as a whole, the mortgage establishes that Cambridge Trust was securing only a one-half interest in the property.

Cambridge Trust took a loss of $26,743.46 when it discharged the first and second mortgages for one-half of the net sale price, Pls.' Mem., Ex. H, Cambridge Trust Payoff Letter, ECF No. 35-8 (discharging the first and second mortgages

for a payment of $814,442 when the balance owed totaled $841,185.46), and it would be nonsensical to conclude that Cambridge Trust was willing to take a loss while allowing Albion, the original debtor, to partake in proceeds from the sale or foreclosure of the property. The only reasonable conclusion is that Cambridge Trust's interest encumbered only Albion's fifty percent interest in the property, and, therefore, after Cambridge Trust exhausted Albion's interest in the property, it discharged the mortgage at a loss.

The United States is correct in noting that a mortgagee may be entitled to be paid from both mortgagors, even if one of the co-mortgagors does not sign the underlying promissory note. Def.'s Mem. 9 (citing Berg v. eHome Credit Corp., 848 F. Supp. 2d 841 (N.D. Ill. 2012)). The facts of Berg, however, differ from the current case in significant ways. In Berg, nothing on the record, including the mortgage or other extrinsic evidence, supported the Bergs' argument that their intent was to convey only Mr. Berg's interest in the property. Id. at 845. Thus, the only reasonable interpretation of the Bergs' mortgage was that it applied to the entire property. Id. Unlike the Bergs' mortgage, the plain language of the Sawyers' second mortgage implies that the mortgage encumbered only a half-interest in the property. See Second Mortgage. Additionally, the postnuptial agreement between Albion and Maria sheds light on the intention

of the mortgagors to convey only Albion's interest. Postnup. Therefore, the only reasonable conclusion is that the second mortgage was granted with the intention that it encumbered only Albion's interest in the property.

**C.   Fraudulent Conveyance Was Not Pled**

The United States raises the issue, in light of In re Lodi, 375 B.R. 33 (D. Mass. 2007) (Rosenthal, Bankr. J.), that the postnuptial agreement potentially divided the Sawyers' property interest in detriment to its creditors, including the United States. Def.'s Opp'n 11-12. Yet the United States did not file a cross claim seeking to set aside a fraudulent conveyance. Moreover, similar to the plaintiff in Lodi, the United States has proffered no evidence that the postnuptial agreement or the second mortgage was made with intent to "hinder, delay, or defraud." Id. at 40. Accordingly, the Court will not decide the merits of the United States' argument on this point.

**D.   Awarding of Costs and Fees**

The Plaintiffs have requested legal fees and costs pursuant to 26 U.S.C. § 7430. Compl. Section 7430 allows the prevailing party to be awarded reasonable litigation costs incurred in connection with any court proceeding brought "by or against the United States in connection with the determination, collection, or refund of any tax." 26 U.S.C. § 7430(a)(2). But "if the United States establishes that [its position] in the proceeding

12

was substantially justified," the party seeking costs and fees will not be treated as the prevailing party. 26 U.S.C. § 7430(c)(4)(B)(i). The government's position is substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." <u>Pierce</u> v. <u>Underwood</u>, 487 U.S. 552, 566 n.2 (1988). The United States' position in this case is reasonable, and, therefore, with regard to section 7430, the Plaintiffs will not be treated as the prevailing party. Each side is to bear their own legal fees and costs.

**IV. CONCLUSION**

The second mortgage encumbered only Albion's one-half interest in the property. The first and second mortgages were paid out of Albion's share of the sale proceeds, and thus the satisfaction of the mortgages exhausted Albion's interest in the property. Accordingly, the money placed in escrow rightfully belongs to the M.A.W. Revocable Trust.

**SO ORDERED.**

                                            _/s/ William G. Young_
                                            WILLIAM G. YOUNG
                                            DISTRICT JUDGE